KEVIN D. KOONS  (SBN 225867)
E-Mail:  kkoons@kgrlaw.com
KROGER GARDIS & REGAS, LLP
111 Monument Cir., Suite 900
Indianapolis, IN  46204
Telephone:  (317) 692-9000
Facsimile:  (317) 777-7431

PATRICIA A. WELCH  (SBN 127889)
E-Mail:  welch.patricia@dorsey.com
DORSEY & WHITNEY LLP
305 Lytton Avenue
Palo Alto, CA 94301
Telephone:  (650) 857-1717
Facsimile:  (650) 857-1288

Attorneys for Defendant
ZPS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| HAMMOND ENTERPRISES, INC., a California corporation,<br><br>        Plaintiff,<br><br>v.<br><br>ZPS AMERICA, LLC, an Indiana limited liability company,<br><br>        Defendant. | CASE NO. 3:12-cv-03600 EDL<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS, OR, IN THE ALTERNATIVE, STAY THIS SECOND-FILED ACTION;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  September 25, 2012, at 9:00 a.m.<br><br>Hon. Hon. Elizabeth D. Laporte |

PLEASE TAKE NOTICE THAT on September 25, 2012, at 9:00 a.m., or as soon

thereafter as may be heard, in Courtroom E in the above-entitled Court, located on the 15th

Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant ZPS America, LLC

("ZPS" or "Defendant") will and hereby does move the Court for an Order dismissing this action

pursuant to Fed. R. Civ. Proc. 12(b)(1), or in the alternative, stay this action based on the

pendency of a similar action in the U.S. District Court for the Southern District of Indiana.

ZPS is requesting that the Court dismiss this action because ZPS previously filed an action in the Southern District of Indiana against Hammond Enterprises, Inc. ("Hammond" or "Plaintiff") concerning the identical contract at issue in this action, against the same parties, and regarding the same issues at stake. *See Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 625-26 (9th Cir. 1991) (quoting *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir.1982). Alternatively, the Court should stay the instant case pending a determination of the first-to-file issue in the Southern District of Indiana.

The undersigned counsel contacted counsel for the Plaintiff, Martin L. Greenman, on or about July 31, 2012, to stipulate to a stay of this action pending a decision by the Southern District of Indiana on Plaintiff's own motion to dismiss or transfer that case to this Court. However, Mr. Greenman refused to agree to such stipulation.

THEREFORE, ZPS requests that this Court dismiss Plaintiff's Complaint, or, in the alternative, stay the instant case pending a decision in the Southern District of Indiana.

DATED: August 17, 2012                    KROGER GARDIS & REGAS, LLP


                                          By:  /s/ Kevin D. Koons                    .
                                          KEVIN D. KOONS
                                          Attorneys for Defendant
                                          ZPS AMERICA, LLC

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. 4

INTRODUCTION ............................................................................................................... 5

INTRODUCTION ............................................................................................................... 5

BACKGROUND ................................................................................................................. 5

    I.        Pre-Litigation Communications ........................................................................ 5

    II.       ZPS's Breach of Contract and Declaratory Judgment Action in
             Indiana ............................................................................................................ 10

    III.      Hammond's Duplicative California Action ...................................................... 11

ARGUMENT ..................................................................................................................... 11

    I.        The First-to-File Rule Supports Proceeding in Indiana. ...................................... 11

           A.       The chronology of the two actions ........................................................... 13

           B.       The similarity of the parties involved. ...................................................... 15

           C.       The similarity of the issues at stake. ......................................................... 15

    II.       This Action Should be Stayed to Allow the Court in the First-Filed
             Action to Decide the Application of the First-to-File Rule. ................................. 17

CONCLUSION ................................................................................................................... 17

Defendant's Motion to Dismiss, or, in the Alternative, Stay Second-Filed Action      Case No. 3:12-cv-03600 EDL

# **TABLE OF AUTHORITIES**

## **Cases**

*Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622 (9th Cir. 1991) ...................................... 12, 17

*Barnes & Noble, Inc. v. LSI Corp.*, 823 F.Supp.2d 980 (N.D. Cal. 2011) .............................. 11, 12

*Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738 (9th Cir. 1979) ........... 12

*Daimler Chrysler Corp. v. General Motors Corp.*, 133 F.Supp.2d 1041 (E.D. Mich. 2001) ....... 17

Dumas v. Major League Baseball Properties, Inc., 52 F.Supp.2d 1183 (S.D. Cal. 1999) ............ 15

*Feller v. Brock*, 802 F.2d 722 (4th Cir. 1986) ............................................................................ 14

*Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931 (Fed. Cir. 1993) ........................................... 12

*Greenline Indus., Inc. v. Agri-Process Innovations, Inc.*, C 08-2438 CW, 2008 WL 2951743
    (N.D. Cal. July 28, 2008) ........................................................................................................ 13

*Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness Inc.*, 179 F.R.D. 264 (C.D. Cal. 1998) . 13

*Inherent.com v. Martindale-Hubbell*, 420 F.Supp.2d 1093 (N.D. Cal. 2006) ...................... 15, 16

*Manufacturers Hanover Trust Co. v. Palmer Corp.*, 798 F.Supp. 161 (S.D. N.Y. 1992) ........... 13

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA., v. Payless Shoesource, Inc.*, No. 11-1892, 2012 WL
    3277222 (N.D. Ca. Aug. 9, 2012) ............................................................... 5, 12, 13, 14

*Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982) .................................... 12, 15

*Recoton Corp. v. Allsop, Inc.*, 999 F.Supp. 574 (S.D.N.Y. 1998) ............................................... 13

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006) .................................... 5

*Z-Line Designs, Inc. v. Bell'O Int'l LLC*, 218 F.R.D. 663 (N.D. Cal. 2003) ............................... 13

## **Other Authorities**

14D Wright A. Miller & M. Kane., Fed. Prac. & Proc. Juris § 3823 (3d ed. 2011) ..................... 12

## **Rules**

Fed.R.Evid. 201. ........................................................................................................................... 5

Defendant's Motion to Dismiss, or, in the Alternative, Stay Second-Filed Action        Case No. 3:12-cv-03600 EDL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

The parties are currently engaged in a contract dispute in two federal district courts located in two different states—Indiana and California.[1]   The cases involve the same contract dispute involving two machines that ZPS sold to Hammond in mid-2009 and delivered to Hammond's facilities in California in February 2010 and June 2010.  The machines are high-precision lathes that can be configured to manufacture various precision parts.  After accepting the machines and manufacturing millions parts on them for its own customers over tens of thousands of production hours, Hammond demanded that it be allowed to return the machines for a refund and threatened to sue if ZPS did not agree to do so.  After a year-and-a-half of receiving Hammond's vacillating demands and threats to sue, ZPS filed suit in Indiana state court on June 14, 2012, for breach of contract and declaratory relief that Hammond could not justifiably revoke its acceptance of the machines.  Hammond removed that case to federal court on July 12, 2012, and ZPS now seeks dismissal of the instant case, which is founded on the same dispute, or in the alternative, to stay this action until the Indiana federal court can decide which case should proceed.

**BACKGROUND**

**I.      Pre-Litigation Communications**

The  parties began discussing prospects of the machine in early 2009.  (Tessarzyk Decl. ¶ 3.)  During these conversations, Mr. Tessarzyk informed Mr. Hammond that the machines were new technology in the U.S., and that if he purchased the machines, Hammond would be only the

---

[1]  Under the Federal Rules of Evidence, a court may take judicial notice of facts that are not subject to reasonable dispute because they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and read determination by resort to sources whose accuracy cannot be readily questioned."  Fed.R.Evid. 201.  "This second set of facts subject to judicial notice under the rules of evidence encompasses *all* the parties' filings before the district court in [Indiana]."  *Nat'l Union Fire Insurance Company of Pittsburgh, PA., v. Payless Shoesource, Inc.*, No. 11-1892, 2012 WL 3277222 , at *7 n.1 (N.D. Cal. Aug. 9, 2012) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006)).

second installation in the United States.  (*Id.*)  Shortly thereafter, Hammond requested ZPS for a quote for the first machine.  (*Id.*)

In April 2009, ZPS prepared a quote for the first machine for the sum of $1,419,000.00, which was revised on May 28, 2009 ("First Machine").  (Compl. [DN1] Ex. A-B.)  Both documents were prepared from ZPS's offices in Indiana.  (Tessarzyk Decl. ¶ 4.)  On June 1, 2009, Hammond signed a Purchase Order for the First Machine and sent it to ZPS's office in Indiana.  (Tessarzyk Decl. ¶ 5; Compl. [DN1] Ex. C.)  ZPS accepted the Purchase Order by sending a written Order Confirmation to Hammond's California office.  (Tessarzyk Decl. ¶ 6; Compl. [DN1] Ex. D.)

On or about August 8, 2009, ZPS prepared a quote for the sale of a second machine for the sum of $1,525,686.00 ("Second Machine").  (Compl. [DN1] Ex. F.)  This quote was also prepared and sent from ZPS's office in Indiana.  (Tessarzyk Decl. ¶ 7.)  On August 19, 2009, Hammond signed a Purchase Order for the Second Machine and sent it to ZPS's offices in Indiana.  (Tessarzyk Decl. ¶ 8; Compl. [DN1] Ex. G.)  The contract provides that the machines were to be manufactured in the Czech Republic.  (*See* Compl. [DN1 at p. 27 of 70] Ex. A, § 9.) The parties also agreed that acceptance of the machines would occur at ZPS's manufacturing facilities in Zlin, Czech Republic.  (*Id.* [DN1 at p. 29 of 70] Terms and Conditions of Sale, ¶ 12) ("Goods acceptance will take place at the Seller's plant, with the standard acceptance part"). Acceptance would be accomplished by demonstrating that the machine could produce the specified part under the Acceptance Criteria stated in the Order Confirmation.  (Compl. [DN1] Ex. D.)  Under the contract, ZPS was not required to install the machines at Hammond's facilities in California.  The special terms in ZPS's written quote provide: "Installation of attachments, machine set-up and testing are performed at ZPS America's premises."  (Compl. [DN1 at p. 27 of 70] Ex. A, § 9 "Special Terms.")

-6-

As for installation, the contract provides that, after acceptance of the machines in Zlin, Czech Republic, "[t]he unpacking, cleaning and assembly of all Goods sold hereunder, all electrical and other connections, and the setup thereof at the initial point of installation shall be performed by Buyer at its expense."  (*Id.* [DN1 at p. 29 of 70] Terms and Conditions of Sale, ¶ 5.)  Acceptance testing on the first machine occurred at ZPS's factory in Zlin, Czech Republic.  (Tessarzyk Decl. ¶ 10.)  After the testing in the Czech Republic, Hammond released the machine, issued payment, and requested shipment to its facilities in California.  (Tessarzyk Decl. ¶ 10.)  ZPS shipped the first machine to Hammond's facility in Pittsburg, California before February 2010.  (Tessarzyk Decl. ¶ 11.)

On or about February 2, 2010, Hammond complained that the First Machine was not meeting the cycle times specified in the Acceptance Criteria and, in retaliation, threatened to cancel its order for the Second Machine.  (Tessarzyk Decl. ¶ 12.)  ZPS quickly responded to Hammond's February 2, 2010 concerns and discovered that the First Machine was not meeting the Specialty Quality Requirements because Hammond was using raw materials that did not meet the specified straightness tolerances for the machine.  (Tessarzyk Decl. ¶ 13.)  In the Quote, ZPS clearly stated that the raw material "bars must be straightened of 1 mm per length of 1,000 mm."  Compl. [DN 1 at p. 15 of 70] Ex. A , Sec. 1.  Hammond's raw materials, however, did not meet this straightness tolerance.  (Tessarzyk Decl. ¶ 13.)  Because Hammond insisted on using a presumably cheaper raw material that did not comply with the machine's specified tolerances, the only solution was to completely re-configure the machine's tooling process.  (Tessarzyk Decl. ¶ 14.)  The reconfigured process required greater complexity and additional steps than the originally contracted-for process, thus potentially adding significant production time per part (i.e., increasing cycle time).  (Id.)

-7-

As a result of the required reconfiguration, the parties executed a modification to the Acceptance Criteria on March 2, 2010 that would accommodate the substandard raw materials yet still produce a high-precision part that could satisfy Hammond's quality requirements. (Tessarzyk Decl. ¶ 15; Compl. [DN1] Ex. J.)  Because the reconfigured process added greater complexity and steps, it did not include minimum cycle times.  (Tessarzyk Decl. ¶ 16.)  ZPS performed the reconfiguration at no charge to Hammond, a process that took approximately 3 months, even though Hammond created the problem by using substandard raw materials. (Tessarzyk Decl. ¶ 17.)  After ZPS successfully met the amended Acceptance Criteria, Hammond made a final acceptance of the First Machine on March 28, 2010, at its California facilities.  (Tessarzyk Decl. ¶ 18; Compl. [DN1] Ex. K.)  Hammond released the Second Machine before shipment from the Czech Republic, which was delivered to Hammond's California facilities in June 2010.  (Tessarzyk Decl. ¶ 19.)

After the machines were shipped to California from the Czech Republic, Hammond became dissatisfied with the performance of the machines, even though the machines had met the amended Acceptance Criteria.  (Tessarzyk Decl. ¶ 20.)  Sometime beginning in August 2010, Mr. Alan Hammond would make off-and-on demands that ZPS remove and return the machines, and threaten to sue ZPS if it did not do so.  (Id.)  ZPS nevertheless worked diligently and attempted to keep its customer happy, despite Hammond's unreasonable demands, resulting in numerous service visits to Hammond's facilities in Pittsburg, California.  (Tessarzyk Decl. ¶ 21.) In fact, ZPS assigned several of its employees to work out of Hammond's facilities for almost an entire year during 2010.  (Id.)

On June 9, 2011, Hammond informed ZPS in writing of its confidence and acceptance of the Machines' performance and quality.   (Tessarzyk Decl. ¶ 22.)  *See* Notice of Removal of Action under 28 U.S.C. Sec. 1441(b) (Diversity), Ex. A Compl. for Damages and Declaratory

Judgment Ex. J, No. 12-00952 (S.D. Ind. July 12, 2012), ECF No. 1.  ZPS continued to provide service support on minor issues, but Hammond made no major complaints about the machines after that date until December 2011.  (Tessarzyk Decl. ¶ 22.)

After that time, Mr. Hammond would continue to vacillate in his demands to return the machines under threat of litigation.  (Tessarzyk Decl. ¶ 23.)  In December 2011, in a telephone conversation with Mr. Tessarzyk, Mr. Hammond harshly demanded with abusive and expletive language that ZPS take its machines back or he would sue ZPS.  (Id.)  By the end of the conversation, however, Mr. Hammond agreed that Tessarzyk would come to California to personally address Hammond's concerns with performance issues.  (Id.)  On December 27, 2011, in response to a follow-up email from that conversation to confirm scheduling, Mr. Hammond informed Tessarzyk that a trip to California was not needed "unless you can make the decision on how to haul the machines out of here."  (Tessarzyk Decl. ¶ 24 and Ex. 1 thereto.)

On February 27, 2012, Mr. Hammond again asserted in a letter to ZPS's offices in Italy that "I am writing to you to try to come to final resolution on the return of the 2 TMZ [machines]."  (Tessarzyk Decl. ¶ 25 and Ex. 2 thereto.)  On March 19, 2012, Hammond again wrote to ZPS, asking, "When will you be removing your machines? I have been requesting this for quite some time."  (Tessarzyk Decl. ¶ 26 and Ex. 3 thereto.)   Finally, on June 4, 2012, Hammond's counsel wrote to Plaintiff, stating, "I am not interested in a dialogue about the merits of this case. … The only thing I am interested in hearing back from you is that ZPS is prepared to make arrangements to accept the return of both machines."  (Tessarzyk Decl. ¶ 27; *See* Notice of Removal of Action under 28 U.S.C. Sec. 1441(b) (Diversity) Ex. M, No. 12-00952 (S.D. Ind. July 12, 2012), ECF No. 1.)

During the time since Hammond's December 27, 2011 email, ZPS attempted to appease Hammond by visiting California to service the machines on no less than 5 occasions and

handling at least 50 telephone support calls.   (Tessarzyk Decl. ¶ 28.)  During the visits, it was

apparent that the machines were not being maintained to the required specifications and that

Hammond was using untrained personnel to operate the machines.  (Id.)

Other than make demands, Hammond has never taken any action to ship the machines

back to ZPS or otherwise return them and cancel the contract.  (Tessarzyk Decl. ¶ 29.)  Since the

machines were delivered in 2010, Hammond has manufactured millions of parts (both "bodies"

and "plugs") on the two machines during tens of thousands of manufacturing hours.  More

precisely, as of July 13, 2012, the machines' logs showed that the first machine had produced

2,172,467 parts in 14,684 hours of run time, and the second machine had produced 1,945,233

parts in 14,016 hours of run time. (Tessarzyk Decl. ¶ 30.)  Hammond's primary customer for the

parts it manufactures on the machines (and continues to manufacture) is Ingersoll Rand Security

Technologies, located at 11819 N. Pennsylvania St., Carmel, Indiana  46032. (Tessarzyk Decl.

31.)

## II.      ZPS's Breach of Contract and Declaratory Judgment Action in Indiana

After almost two years of false threats of litigation by Mr. Hammond, ZPS filed its

declaratory judgment action and request for damages on June 14, 2012 in the Circuit Court of

Marion County, Indiana as cause number 49C01-1206-CC-024203.  *See* Notice of Removal of

Action under 28 U.S.C. Sec. 1441(b) (Diversity) Ex. A, No. 12-00952 (S.D. Ind. July 12, 2012),

ECF No. 1.  Counsel for ZPS emailed a copy of the complaint to Hammond's counsel on the

same day it was filed, and Hammond's registered agent was formally served on June 26, 2012.

*See* Greenman Decl. ¶¶ 2–3 and Ex. A thereto, No. 12-00952 (S.D. Ind. July 19, 2012), ECF No.

8-3.  Hammond removed the case to the Southern District of Indiana on July 12, 2012.  *Id.* at

ECF No. 1.  The Indiana suit was not filed in bad faith or while misleading Hammond or its

counsel.  To the contrary, it was the natural course of action for a party who has been threatened

with litigation for almost two years and when opposing counsel foreclosed any option of settlement.[2]  ZPS reasonably believed that a declaratory judgment action and request for damages "was its best option to expedite a resolution," to this ongoing matter since Hammond's counsel made it clear that settlement was not an option.  *Barnes & Noble, Inc. v. LSI Corp.*, 823 F.Supp.2d 980, 992 (N.D. Cal. 2011).

### III.    Hammond's Duplicative California Action

Rather than file a counterclaim in the Indiana action, of which it already had knowledge, Hammond chose to file this duplicative action in the Northern District of California twenty-six days after ZPS filed the Indiana case.  It chose that course despite the fact that Hammond's counsel was on notice of the suit the day it was filed and has since conceded that venue is proper in the Southern District of Indiana.  *See* Mot. to Dismiss, or, In the Alternative, Mot. to Transfer Venue, at 2 & 12, No. 12-00952 (S.D. Ind. July 19, 2012), ECF No. 8.

### ARGUMENT

The Court should dismiss, or in the alternative, stay this action when there is a case that was previously filed and pending in the Southern District of Indiana with the same parties and concerning the same issues.

### I.    The First-to-File Rule Supports Proceeding in Indiana.

The first-to-file rule holds that when two parallel actions have been filed in different forums, the first-filed case should be the one to proceed whether or not the first-filed case is a declaratory judgment action.  *See Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th

---

[2]  Hammond asserts in the Indiana action that ZPS's complaint "appears to be a settlement ploy, as counsel for ZPS sent a letter on June 14 to counsel for Hammond, offering to settle the case that it had filed that same day . . . "  Mot. to Dismiss, or, In the Alternative, Mot. to Transfer Venue, at 7, No. 12-00952 (S.D. Ind. July 19, 2012), ECF No. 8.  Hammond attempts to use this offer of settlement to support its contention that ZPS's complaint was an improper anticipatory filing or somehow filed it in bad faith.  However, Hammond seems to ignore the fact that it, not ZPS, foreclosed the option of settlement.

-11-

Cir. 1982) ("[T]he court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with the second action."); *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) ("The general rule favors the forum of the first-filed action, whether or not it is a declaratory action."); *Barnes & Noble, Inc. v. LSI Corp.*, 823 F.Supp.2d 980, 986 (N.D. Cal. 2011) ("the general rule is that the case first filed takes priority and the subsequently filed suit should be dismissed or transferred or stayed.") (quoting 14D Wright A. Miller & M. Kane., Fed. Prac. & Proc. Juris § 3823 (3d ed. 2011)).

The purpose of this rule is to promote judicial efficiency, federal comity, and to avoid duplicative litigation. *Pacesetter*, 678 F.2d at 95; *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). As a general rule, the first-to-file rule "should not be disregarded lightly." *Alltrade, Inc.*, 946 F.2d at 625; *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979). A court's decision to depart from this rule must be a

> sound reason that would make it unjust or inefficient to continue the first-filed action. Such reason may be the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest.

*Genentech*, 998 F.2d at 938.

The first-to-file rule is invoked where "a complaint involving the same parties and issues has already been filed in another district." *Alltrade*, 946 F.2d at 625. Courts consider the following three factors in determining whether the first-to-file rule is applicable: "(1) the chronology of the two actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA., v. Payless Shoesource, Inc.*, No. 11-1892, 2012 WL 3277222 , at *3 (N.D. Ca. Aug. 9, 2012) (citing *Alltrade, Inc.*, 946 F.2d at 625-26).

1

## A.      The chronology of the two actions

2

The first factor in whether to apply the first-to-file rule is the chronology of the two

3

actions.  *Id.*  Here, ZPS filed its Complaint in the Superior Court of Marion County, Indiana on

4

June 14, 2012.  Notice of Removal of Action under 28 U.S.C. Sec. 1441(b) (Diversity) at 1, Ex.

5

A, No. 12-00952 (S.D. Ind. July 12, 2012), ECF No. 1.   Hammond filed this action on July 10,

6

2012, almost one month after the ZPS filing in Indiana state court.  Although the Indiana state

7

court action was removed to the Southern District of Indiana on July 12, 2012, the state court

8

filing date is the relevant benchmark when a case has been removed by the defendant to federal

9

court.  *Greenline Indus., Inc. v. Agri-Process Innovations, Inc.*, C 08-2438 CW, 2008 WL

10

2951743 at *4 (N.D. Cal. July 28, 2008)  ("date of filing in the state court, not the date of

11

removal, is considered for purposes of deciding which action was filed first") (citing

12

*Manufacturers Hanover Trust Co. v. Palmer Corp.*, 798 F.Supp. 161, 166 (S.D. N.Y. 1992)).

13

In addition, this "factor requires that one action be filed meaningfully prior to the other."

14

*Nat'l Union Fire*, 2012 WL 3277222 at *3.   This factor has been satisfied where the first action

15

was filed almost three months prior to the second action.  *See Guthy-Renker Fitness, L.L.C. v.

16

*Icon Health & Fitness Inc.*, 179 F.R.D. 264, 270 (C.D. Cal. 1998).   It has not been satisfied

17

where "the time between the actions is relatively short because the two actions will not

18

necessarily have progressed to different states."  *Nat'l Union Fire*, 2012 WL 3277222 at *3

19

(citing *Z-Line Designs, Inc. v. Bell'O Int'l LLC,* 218 F.R.D. 663, 665 (N.D. Cal. 2003) (not

20

satisfied where initial action was filed two days before the second filing); *Recoton Corp. v.*

21

*Allsop, Inc.*, 999 F.Supp. 574, 577 (S.D.N.Y. 1998) (not satisfied where two days separated the

22

two actions).

23

Moreover, here the Indiana case, filed twenty-six days prior, has proceeded further than

24

the present action.  In the Indiana case, Hammond filed a Motion to Dismiss, or, In the

25

26

27

28

-13-

Alternative, Motion to Transfer on July 19, 2012 ("Motion to Dismiss").  Mot. to Dismiss, or, In the Alternative, Mot. to Transfer Venue, No. 12-00952 (S.D. Ind. July 19, 2012), ECF No. 8. ZPS's response to the Motion to Dismiss was filed on August 17, 2012. *See* Response in Opposition to Motion to Dismiss or Transfer, No. 12-00952 (S.D. Ind. Aug. 17, 2012), ECF No. 14.  Therefore, the Indiana action has progressed further than the California action with the Southern District of Indiana most likely to rule on the first-to-file issue prior to this Court— meeting the "meaningfully prior" criterion.

Applying the first-to-file rule in the instant case is consistent with this Court's recent opinion in *National Union Fire Insurance Co.* in which the Court stated: "Prudence requires that whenever possible, coordinate courts should avoid issuing conflicting orders,' and judicial comity's 'underlying policy of judicial administration . . . counsels against the creation of conflicts,' particularly where they would work 'a grave disservice to the public interest in the orderly administration of justice.'" *Nat'l Union Fire Insurance Co.*, 2012 WL 3277222 at *8 (quoting *Feller v. Brock*, 802 F.2d 722, 727-28 (4th Cir. 1986)).  Because Hammond filed this action almost one month after the Indiana action was filed, this Court and the Southern District of Indiana could potentially issue conflicting opinions on the exact same issue—whether the cases pending before the respective courts should be dismissed.  Rather than have both courts decide the exact same issue (and with potentially conflicting results), the interests of judicial economy, comity, and the avoidance of conflicting orders demands that the Indiana action should be allowed to proceed.[3]

---

[3]  ZPS attempted to avoid the filing of a duplicative motion to dismiss in the present case and the Indiana case by contacting Hammond's counsel on July 31, 2012, to seek consent for a stay of this action while the Southern District of Indiana decided the issue as to dismissal or transfer of venue.  Hammond's counsel, however, refused to agree to a stay, requiring ZPS to wastefully spend its own resources, and now that of this Court, by filing the present Motion. Hammond's actions are a direct contradiction to any argument that it has made or may make that

Because the Indiana court is where the first action was filed, it is the appropriate forum to proceed to judgment, and a fortiori, to decide the threshold question of where this controversy should be litigated.  *See Pacesetter*, 678 F.2d at 96 (dismissing a second-filed case in favor of the party that previously filed suit in another district and the parties and issues in the two suits were identical).

### B.        The similarity of the parties involved.

The parties in both actions are identical.  Hammond is the plaintiff in this action and the defendant in the Indiana action.   ZPS is the plaintiff in the Indiana action and the defendant in this action.  *See ZPS America, LLC v. Hammond Enterprises, Inc.*, No. 12-00952 (S.D. Ind. July 12, 2012).    Therefore, the second factor is satisfied.

### C.        The similarity of the issues at stake.

The issues in both cases are the same—whether Hammond could justifiably revoke its acceptance of the machines and cancel the contract.   Under the first-to-file rule, "the issues in the first and second action need not be identical but 'substantially similar.'"  *Inherent.com v. Martindale-Hubbell*, 420 F.Supp.2d 1093, 1099 (N.D. Cal. 2006) (quoting *Dumas v. Major League Baseball Properties, Inc.,* 52 F.Supp.2d 1183, 1189 (S.D. Cal. 1999), *vacated on other grounds by,* 104 F.Supp.2d 1224 (S.D. Cal. 2000), *aff'd,* 300 F.3d 1083 (9th Cir. 2002)).  In *Inherent*, Reed Elsevier, Inc.[4] filed the first suit in the Superior Court of New Jersey—a declaratory judgment action, requesting the court to find that the plaintiff was not in breach of contract.  *Inherent.com*, 420 F.Supp.2d at 1096.  Then, eleven days later in the Superior Court of California, Inherent filed a mirror image declaratory judgment action with a claim for damages that was not included in the first action.  *Id.* at 1099.  However, the district court held that the

ZPS has engaged in duplicative litigation.  *See Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).

[4]  Martindell-Hubbell is a division of Reed Elsevier, Inc.  *Inherent.com*, 420 F.Supp.2d at 1095.

-15-

issues were similar because both complaints revolved around the same contract and whether a breach had occurred.  *Id.*

The instant case is factually similar to *Inherent*.  Both actions seek relief based upon the same contracts for the purchase of the two machines.  *See* Compl, [DN 1]; *see also* Notice of Removal of Action under 28 U.S.C. Sec. 1441(b) (Diversity), Ex. A, No. 12-00952 (S.D. Ind. July 12, 2012), ECF No. 1.   In the instant action, Hammond seeks damages for breach of contract, breach of express warranty, breach of implied warranty, and, although not expressly stated as a declaratory judgment action, a determination from this Court that it is entitled to revoke its acceptance—in substance, a declaratory action.  (Compl. [DN 1] 11-12.  In the Indiana action, ZPS asks for declaratory relief, seeking a determination that Hammond is not entitled to revoke its acceptance of the machines, that ZPS justifiably refused return of the machines, and remedies applicable to such determination, if made.  Notice of Removal of Action under 28 U.S.C. Sec. 1441(b) (Diversity), Ex. A at 10, No. 12-00952 (S.D. Ind. July 12, 2012), ECF No. 1.  Although ZPS's complaint includes a separate claim for damages, its claim for damages does not render the two actions separate actions under *Inherent*.  Moreover, Hammond has already conceded in the Indiana action that the two suits are mirror-images of one another.  *See* Def.'s Br. in Support of Mot. to Dismiss, or In the Alternative, Mot. to Transfer Venue 17, No. 12-00952 (S.D. Ind. July 19, 2012), ECF. No. 8-1.  Therefore, the issues between the two suits are "substantially similar."

Given that the case before the Southern District of Indiana is the first-filed action, as well as the similarity between the parties and  issues of the two suits, the first-to-file rule applies and dismissal of the second-filed case at bar is appropriate.

1

2

## II. This Action Should be Stayed to Allow the Court in the First-Filed Action to Decide the Application of the First-to-File Rule.

3

In a situation where the first-to-file rule may apply, "the most appropriate approach is for

4

the court, where a complaint is first filed to determine which case should go forward." *Daimler*

5

*Chrysler Corp. v. General Motors Corp.*, 133 F.Supp.2d 1041, 1042 (E.D. Mich. 2001); *see also*

6

*Alltrade*, 946 F.2d at 629 (determining that a stay is appropriate in the second-filed suit until the

7

court where the action was first-filed renders a decision on jurisdiction).  In addition, allowing

8

the Southern District Court of Indiana to decide whether the first-to-file rule is applicable is

9

consistent with the principles of comity.

10

11

> It is . . .  more appropriate, as a matter of judicial comity, for the court of first filing to determine whether to retain or relinquish jurisdiction, rather than leave it to the court of later filing to make that decision. *See [PAJ, Inc. v.] Yurman Design, supra*, 1999 WL 68651, *2 [(N.D. Tex. Feb.9, 1999)] ("[t]he federal courts have long recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank— to exercise care to avoid interferences with each other's affairs.") As a matter of comity among equals, the second judge to get a case should accede to the decision of the court of first-filing, rather than vice-versa.

12

13

14

15

16

17

18

*Daimler Chrysler*, 133 F.Supp.2d at 1041.

19

### CONCLUSION

20

For all of the foregoing reasons, Defendant ZPS America, LLC respectfully requests that

21

this Court grant Defendant's Motion to Dismiss, or, In the Alternative, Stay this Second-Filed

22

Action.

23

Respectfully submitted,

24

DATED:  August 17, 2012                    KROGER GARDIS & REGAS, LLP

25

26

27

By:  /s/ Kevin D. Koons                          .
                                                 KEVIN D. KOONS

28

Attorneys for Defendant
ZPS AMERICA, LLC

-17-