IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAMMOND ENTERPRISES INC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ZPS AMERICA LLC, et al.,<br><br>Defendants. | No. C -12-03600(EDL)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CLAIMS 5-8 UNDER FED. R. CIV. P. 12(b)(6) AND DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AS MOOT** |

All Defendants moved to dismiss Claims 5-8 of Plaintiffs' Second Amended Complaint under Rule 12(b)(6). Defendants Tajmac-ZPS ("Tajmac") and Michele Tajariol, both from the Czech Republic (collectively, the "Czech Defendants"), also moved to dismiss the claims against them based on lack of personal jurisdiction under Rule 12(b)(2).

For the reasons set forth below, the Court grants Defendants' Rule 12(b)(6) motion and dismisses Claims 5-8 of the Second Amended Complaint with prejudice. Because these are the only claims asserted against the Czech Defendants, the Court denies the Czech Defendants' motion to dismiss for lack of personal jurisdiction as moot.

**I.   Background**

This case arises out of Plaintiffs' purchase of two TMZ 642 machine lathes from Defendant ZPS America, LLC ("ZPSA") for approximately $3,000,000. Plaintiff Hammond Enterprises, Inc., manufactures and sells precision parts. Plaintiff CNC Technologies, LLC, which is managed by Hammond Enterprises' CEO, Alan Hammond, purchases machining equipment and leases it to Hammond Enterprises. Plaintiffs both operate out of the same facility in Pittsburg, California. In early 2009, Defendant Olaf Tessarzyk, the president and CEO of ZPSA, met with Alan Hammond regarding the purchase of a machine lathe. Hammond informed Tessarzyk that Plaintiffs needed a

machine capable of producing 65,000 brass bodies and plugs a month due to a contract with a third party. Hammond also told Tessarzyk that each body and plug needed to be manufactured in conformance with the third party's design specifications. Tessarzyk recommended that Plaintiffs purchase a TMZ 642 machine lathe manufactured by Defendant Tajmac in the Czech Republic. According to Hammond, Tessarzyk and Defendant Tajariol, Tajmac's CEO, represented that this machine was capable of producing parts at a particular frequency ("cycle time") and that it was capable of operating a certain number of hours per day at 85% efficiency over a particular schedule ("uptime reliability"). (Second Amended Complaint ("SAC") ¶ 2-3, 22, 24.) Tessarzyk also allegedly represented that the TMZ 642 was superior to other available machine lathes and would enable Plaintiffs to meet their client's needs. (Id. at 22)

Hammond agreed to purchase a TMZ 642 machine lathe from ZPSA. In April 2009, ZPSA prepared a quote for the machine. The last page of this quote is a one-page document titled "TERMS AND CONDITIONS OF SALE ZPS AMERICA LLC." (SAC Ex. A at 16.) The term sheet is written in very small typeface and contains 19 paragraphs of contractual terms. Paragraph 13 sets forth a disclaimer of implied warranties in capitalized letters. (Id.) On June 1, 2009, Hammond Enterprises issued a purchase order based on the first quote as amended. Tajmac delivered the machine from its facility in the Czech Republic to Plaintiffs' manufacturing facility in California in January 2010. On August 8, 2009, ZPSA prepared a quote for a second TMZ 642 machine. This quote contained the same one-page term sheet as the first quote. (SAC Ex. F at 16.) Plaintiffs issued a purchase order for the second machine based on this quote.[1] The second machine was delivered to California in June 2010.

Plaintiffs allege that after installation, both machines have had "innumerable equipment failures and have been largely incapable of meeting the contractual cycle times for the body and plug, as well as incapable of meeting the required uptime and efficiency rating under the contract." (SAC ¶ 40.) Due these alleged problems, Plaintiffs state that they spent hundreds of hours attempting to keep the machines operating, that Defendants have failed to reimburse Plaintiffs for

---

[1] Although Hammond Enterprises issued the purchase order, CNC Technologies ultimately paid the purchase price for the second machine, which was used by Hammond Enterprises. (SAC ¶¶ 29-31.)

2

repair work that Defendants should have performed, that Plaintiffs have been forced to purchase a machine from another company to make up for the Defendants' machines' shortcomings, that defects in the machines have rendered Plaintiffs' raw materials unusable and saleable only as scrap, and that ZPSA has refused to accept return of both machines. (SAC ¶¶ 43-46.)

Hammond Enterprises filed suit against ZPSA on July 10, 2012. On August 7, 2013, Plaintiffs filed the SAC against Defendants ZPSA, Tessarzyk, Tajariol, and Tajmac. The SAC contains claims for revocation of acceptance (Claim 1), breach of contract (Claim 2), breach of third party beneficiary contract (Claim 3), breach of express warranty (Claim 4), breach of implied warranty (Claim 5), negligence (Claim 6), negligent misrepresentation (Claim 7), and fraudulent inducement (Claim 8).[2] The only claims that Plaintiffs assert against the two Czech Defendants, Tajmac and Tajariol, are Claims 5-8.

ZPSA and Tessarzyk moved to dismiss Claims 5-8 under Rule 12(b)(6). (Dkt 64.) The Czech Defendants joined in the 12(b)(6) motion and moved to dismiss all claims against them for lack of personal jurisdiction under Rule 12(b)(2). The Court held a hearing on these motions on October 8, 2013.

**II. Discussion**

Defendants argue that Claim 5, for breach of implied warranty, fails to state a claim because the contracts for the two machines both contain conspicuous disclaimers of implied warranties. Defendants assert that Claims 6-8, which are tort claims, are barred by the economic loss rule. Plaintiffs counter that the disclaimers are not sufficiently conspicuous and that the economic loss rule does not apply due to the "other property" exception.

A. <u>Legal Standard</u>

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). Dismissal under Rule 12(b)(6) may be based on the lack of a cognizable leal theory or on the absence of sufficient facts alleged

---

[2] Plaintiffs mis-numbered the fifth claim, which is for breach of implied warranty claim, as the fourth claim, and this error carried through to the remainder of the claims.

3

1 under a cognizable theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir.
2 2008). The reviewing court's "inquiry is limited to the allegations in the complaint, which are
3 accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch Ltd. v.
4 Behrens, 546 F.3d 580, 588 (9th Cir. 2008). A court need not, however, accept as true the
5 complaint's "legal conclusions." Iqbal, 556 U.S. at 678. "While legal conclusions can provide the
6 framework of a complaint, they must be supported by factual allegations." Id. at 679. Thus, a
7 reviewing court may begin "by identifying pleadings that, because they are no more than
8 conclusions, are not entitled to the assumption of truth." Id.

9 Courts must then determine whether the factual allegations in the complaint "plausibly give
10 rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability
11 requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not
12 permit the court to infer more than the mere possibility of misconduct." Id. at 678 (internal
13 quotation marks omitted). That is to say, plaintiffs must "nudge[] their claims across the line from
14 conceivable to plausible." Twombly, 550 U.S. at 570.

15 On a motion to dismiss, a court's analysis is generally limited to the contents of the
16 complaint. Dichter-Mad Family Partners, LLP v. United States, 709 F.3d 749, 762 (9th Cir. 2013.)
17 A court may also consider, however, exhibits that the plaintiff has attached to the complaint without
18 converting a Rule 12 motion into one for summary judgment under Rule 56. Id. Federal Rule of
19 Civil Procedure 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading
20 is part of the pleading for all purposes."

21     B.    Breach of Implied Warranty

22 Plaintiffs' claim for breach of implied warranty fails to state a claim because the contracts for
23 both machines contain conspicuous disclaimers of implied warranties. (SAC Ex. A at 16, Ex. C at
24 16; Defs.' Reply Ex A.)[3] Under the California Commercial Code, disclaimers of implied warranties
25 of merchantability and fitness must be conspicuous to be effective. Cal. Comm. Code § 2316(2).

---

27 [3] Defendants note that the copy quality of the term sheets attached to the SAC "is deteriorated
28 (likely due to a second generation scan) as compared to what Plaintiffs actually received." (Defs.' Reply at 2 n.1.) Defendants therefore attached a more representative copy of the term sheet as Exhibit A to their reply. Plaintiffs did not dispute the clarity of their copies.

4

The Code defines "conspicuous" as "so written, displayed, or presented that a reasonable person against whom it is to operate ought to have noticed it." Cal. Comm.Code § 1201(10). "Whether a term is 'conspicuous' or not is a decision for the court," and conspicuous terms include "a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size" and "language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language." Id.

The purpose of the conspicuousness requirement is to "protect the buyer from the situation where the salesman's 'pitch,' advertising brochures, or large print in the contract, giveth, and the disclaimer clause – in fine print – taketh away." Dorman v. Int'l Harvester Co., 46 Cal. App. 3d 11, 18 (Cal. Ct. App. 1975). The test is whether "attention can reasonably be expected to be called to the disclaimer provision." Id. In considering whether a disclaimer is conspicuous, relevant factors include the size of the disclaimer, color of the font, the location of the disclaimer within the document at issue, and whether there is a heading calling attention to the disclaimer. Id. at 18-19. The sophistication of the parties and the circumstances of the negotiation and signing of the contract are also factors. Sierra Diesel Injection Servs., Inc. v. Burroughs Corp., 890 F.2d 108, 114 (9th Cir. 1989).

Here, the first and second quotes for the machines both contained an identical one-page term sheet as the last page of the document. The entire term sheet is in small typeface. Paragraph 13 of the term sheet contains a boldface, all-capitals heading stating "Warranty: Disclaimer of Implied Warranties." It is followed by a subheading A, which states, in all capitals, that

> The Warranties provided herein are the exclusive warranties made by Seller to Buyer. Seller makes no other warranties, express or implied by law or usage. Seller disclaims and Buyer waives, all express and implied warranties, including but not limited to the implied warranties of merchantability and fitness for a particular purpose. Buyer acknowledges that the description of the goods or repairs stated in Seller's purchase order is for the sole purpose of identifying the goods.

(Defs.' Reply Ex A, Dkt 72-1.)

5

1	This disclaimer is sufficiently conspicuous to preclude implied warranties. Although the entire term sheet is written in small typeface, the disclaimer of implied warranties is all in capitalized letters and is introduced with a separate, bold heading, distinguishing the disclaimer from the surrounding paragraphs. Additionally, Plaintiffs are sophisticated merchants that regularly purchase machining equipment. (SAC ¶¶ 9-10.)

Plaintiffs focus on the size of the typeface and the disclaimer's location in term sheets appended at the end of the first and second quotes, but not expressly incorporated into the quotes. However, "[w]hether a disclaimer is conspicuous is not simply a matter of measuring the type size or looking at the placement of the disclaimer within the contract." Sierra Diesel, 890 F.2d at 115. Moreover, the term sheets were attached to both the first and second quotes and contained standard contractual terms absent from the body of the quotes. See, e.g., Kowalsky v. Hewlett-Packard Co., 771 F. Supp. 2d 1138 (N.D. Cal. 2010) (enforcing disclaimer despite it being in a separate document on defendant's website). Plaintiffs' efforts to distance themselves from the term sheets are particularly unpersuasive because Plaintiffs allege that the term sheets are part of their contracts in Claim 4 of SAC and quote the same paragraph of the term sheet that contains the disclaimer. (SAC ¶ 60 (quoting Ex. A. ¶ 13.B.2).)

Finally, although Plaintiffs cite a number of cases where disclaimers and releases were held to be unenforceable because they were inconspicuous, those cases are distinguishable. In Dorman, there was no heading to call the buyer's attention to the disclaimer. 46 Cal. App. 3d at 19. In Sierra Diesel, the buyer was not familiar with computers or with contracts and the disclaimer was on the back of a page. 890 F.2d at 114-15. Leon v. Family Fitness Ctr. and Link v. Nat'l Assoc. for Stock Car Auto Racing, Inc., each involved releases of liability, unsophisticated consumers, and confusing and ambiguous language, none of which are present here. Leon, 61 Cal. App. 4th 1227, 1230-31, 1233 (Cal. Ct. App. 1998); Link,148 Cal. App. 3d 138, 141-42 (Cal. Ct. App. 1984).

C.	Negligence, Negligent Misrepresentation, and Fraudulent Concealment

The "economic loss rule" bars Plaintiffs' claims for negligence, negligent misrepresentation, and fraudulent concealment. Plaintiffs allege that the machines damaged raw materials by failing to machine the materials into parts with the contractually required specifications and that the resulting

nonconforming parts were unusable and saleable only at scrap value. Plaintiffs argue that the machines thus caused damaged to "other property," so the economic loss rule does not apply. Although it is a somewhat close question, the Court concludes that under California law the nonconforming parts are not damaged "other property" within the meaning of the "other property" exception to the economic loss rule. Otherwise, as explained more fully below, the exception would largely swallow the rule, whose purpose is to prevent contract claims from bleeding over into tort claims in commercial transactions. When one buys a machine for the express purpose of shaping materials, and the machine allegedly performs poorly, a lawsuit over the machine's performance sounds in contract, not tort. The Court therefore finds that Plaintiffs have failed to state a claim with respect to Claims 6, 7, and 8.

            1.        Plaintiffs' Tort Claims

A brief description of Plaintiffs' tort claims is important to understanding the parties' arguments. Claim 6 of the SAC is a negligence claim against Tajmac. Plaintiffs allege that Tajmac owed Plaintiffs a duty to "manufacture the TMZ 642 machines so they would be reasonably fit for their intended purposes, free of defects and deficiencies, in accordance with the standard of the industry within which similar machines are manufactured, and capable of meeting the specifications established by Hammond, which [ZPSA] had represented the machines would be able to meet, and to which plaintiff is informed and believes, and thereon alleges, TAJMAC had also agreed." (SAC ¶ 70.) Plaintiffs further allege that Tajmac negligently and carelessly designed, manufactured, calibrated, tested, and repaired the machines and component parts thereof.

Claim 7 of the SAC is for negligent misrepresentation against Tajmac, Tessarzyk, and Tajariol. Plaintiffs allege that these Defendants misrepresented the capabilities of the machines and their ability to perform in accordance with specifications, specifically, "the cycle times and uptime reliability" of the machines. (Id. ¶ 78.) Plaintiffs further allege that these Defendants represented that a number of the machines' components were reliable, that spare parts were affordable, and that the TMZ 642 machine lathes were superior to competitor lathes. (Id. ¶ 79.) Claim 8 of the SAC is for fraudulent inducement against all Defendants. Plaintiffs allege that Defendants made the same misrepresentations alleged in the negligent misrepresentation claim and maintain that these

7

misrepresentations induced Plaintiffs to purchase the machines. (Id. ¶¶ 86-87.) In all three claims, Plaintiffs allege "property damage in the form of wasted, unusable, and unsalable raw material," lost profits, lost employee time, and costs for replacement parts. (Id. ¶¶ 75, 82, 92.)

### 2. Economic Loss Rule

"The economic loss rule provides that [w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic losses.'" Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 988 (Cal. 2004) (internal quotation marks omitted). The purpose of the economic loss rule is to prevent "the law of contract and the law of tort from dissolving into one another." Id. The doctrine hinges on the difference between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and transactions involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by tort law. Id. "The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." Id..; see also Oracle USA, Inc., v. XL Global Servs. Inc., Case No. 09-537 MHP, 2009 U.S. Dist. LEXIS 59999, at *13 (N.D. Cal. July 13, 2009) ("In summary, the fundamental rule in California is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement.").

The California Supreme Court analyzed the economic loss rule and its "other property" exception in Seely v. White Motor Co., 63 Cal. 2d 9 (Cal. 1965). The court explained that the distinction between tort law and contract law rests on the nature of the responsibility a manufacturer undertakes in distributing its products. Id. at 18. The court held that a manufacturer "can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm." Id. The court held that "physical injury" in this context includes physical injury to the plaintiff's property as well as personal injury. Id. at 19. A manufacturer cannot, however, "be held for the level of performance of his products in the consumer's business unless he agrees that the product was

8

designed to meet the consumer's demands." Id. at 18. In other words, although a consumer should not bear the risk of physical injury when buying a product on the market, he can be "fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will." Id. The court noted that even in negligence actions, a manufacturer's liability is limited to damages for physical injuries, not economic loss. Id.

Although economic loss includes damages for inadequate value, costs of repair, replacement of the defective product, and consequent loss of profits, it does not include "any claim of personal injury or damages to other property." Jimenez v. Sup. Ct. of San Diego Cnty., 29 Cal. 4th 473, 482 (Cal. 2002). "Other property" generally means property other than the product at issue, although in some circumstances damage to "other property" includes damage to one part of a product caused by another, defective part. Id. at 483-84.

### 3. Analysis

Contrary to Defendants' argument, the SAC sufficiently alleges damage to property other than the machines themselves. Although the SAC focuses on the alleged failure of the machines to produce parts fast enough or operate continuously enough, it also alleges that defects in the machines resulted in high-grade metal raw materials being machined to improper specifications and thus rendered unusable and salable only at scrap value. (SAC ¶ 45.) Under Rule 12(b)(6), the Court must accept factual allegations as true and make reasonably inferences in Plaintiffs' favor. Cf. NuCal Foods, Inc. v. Quality Egg LLC, Case No. 10-3105, 2013 U.S. Dist. LEXIS 6809, at *12 (inferring from amended complaint that the plaintiff plausibly pled damage to "other property" and finding that economic loss rule did not bar negligence claim in its entirety in the context of salmonella outbreak).

Therefore, the Court must address Defendants' more fundamental argument about the application of the economic loss rule. As noted above, the economic loss rule in California requires that a purchaser recover in contract, not tort, for purely economic loss due to disappointed expectations. Here, Plaintiffs are sophisticated merchants disappointed because the machines allegedly failed to produce parts meeting contractually required specifications. This is not a situation, for instance, where the machines purchased malfunctioned and caught fire, thereby

9

damaging other machinery, the factory floor, or raw materials in storage, or where a purchased part destroyed another part of a larger product. Rather, the damage is that Plaintiffs' expectations were not met.

Plaintiffs contend that California courts set out a clear rule in <u>Jimenez</u>, <u>KB Homes v. Sup. Ct. of Los Angeles Cnty.</u>, 112 Cal. App. 4th 1076 (Cal. Ct. App. 2003), and <u>Transwestern Pipeline Co. v. Monsanto Co.</u>, 46 Cal. App. 4th 502 (Cal. Ct. App. 1996), that to determine whether the "other property" exception applies, a court should look at whether the plaintiff alleges damage to anything other than the product sold. In this case, Plaintiffs argue, the products sold are the machines, and the wasted raw materials are other property. According to Plaintiffs, that the purpose of the machines was to shape the raw materials is irrelevant.

In <u>Jimenez</u>, allegedly defective windows damaged stucco, insulation, framing, drywall, paint, wall covers, floor coverings, baseboards, and other parts of a home. <u>Jimenez</u>, 29 Cal. 4th at 476. The defendants argued that the "product" at issue was the entire house in which the windows were installed. The court concluded that "the manufacturer of a defective window installed in a mass-produced home may be held strictly liable in tort for damage that the window's defect causes to other parts of the home in which it is installed." <u>Id.</u> at 484. Significantly, the court specifically limited its holding to those facts, stating that it had "no occasion here to consider whether defective raw materials should be treated in the same manner as component parts or whether there may be situations in which the economic loss rule would bar recovery for damages that a defective component part causes to other portions of the finished product of which it is a part." <u>Id.</u>

In <u>KB Home</u>, the court reversed summary judgment that the economic loss rule barred tort damages for the cost of repairing defective furnaces. 112 Cal. App. 4th at 1087. The defendant manufactured and installed furnaces. A component of the furnace, called a NOx rod, was allegedly defective and damaged other components of the furnace. The trial court held that the furnace was a single unit and physical damage caused by the NOx rod to other parts of the furnace did not constitute damage to other property. The appellate court reversed, reasoning that distinguishing between "other property" and the product itself in a component-to-component damage case "requires a determination whether the defective part is a sufficiently discrete element of the larger product that

10

1 it is not reasonable to expect its failure invariably to damage other portions of the finished product."
2 Id. at 1087. The court concluded that resolution of the issue in that case should have been left to the
3 trier of fact. The damage here is even further removed, in that the machines were not component
4 parts of finished products, but instead were complete products sold to Plaintiffs for the sole purpose
5 of manufacturing other finished products out of Plaintiffs' raw materials. Unlike the situation in KB
6 Home, here it was eminently reasonable and foreseeable to expect that the machines' malfunctioning
7 in producing finished products according to specifications would cause damage to the raw materials
8 used in the manufacturing process.

9 Transwestern Pipeline involved a lubricant the defendant used with a natural gas compressor.
10 The lubricant contained polychlorinated biphenyls (PCBs) that leaked into the plaintiff's pipelines,
11 requiring the plaintiff to incur cleanup costs. The court held that there was property damage, not just
12 economic loss, because the PCBs contaminated the plaintiff's pipelines and the condensate within
13 the pipelines, both of which were the property of the plaintiff. 46 Cal. App. 4th at 530. The court
14 also reasoned that unlike in a typical warranty case, which involves allegations that a product did not
15 work for its intended purpose, the plaintiff did not contend that the lubricant performed inadequately
16 in the compressor. Id. at 532. Here, in contrast, Plaintiffs contend that the machines performed
17 inadequately for their intended purpose.

18 Unlike these California cases, this case does not involve component-to-component damage
19 or unforeseeable collateral damage. The Court is thus left to apply the economic loss doctrine
20 consistent with the purpose of the doctrine, which is to preserve the distinction between contract and
21 tort. Because Plaintiffs' complaints arise from the machines' alleged failure to perform as
22 contracted for, this case sounds in contract. In Nelson v. Todd's Ltd., the Iowa Supreme Court
23 applied the economic loss rule to analogous facts, and like the California Supreme Court in
24 Robinson Helicopter, 34 Cal. 4th at 988, focused on whether the alleged damage related to the
25 purchaser's disappointed expectations. 426 N.W.2d 120, 125 (Iowa 1988). There, one batch of the
26 meat curing agent at issue lacked a necessary ingredient, and when the plaintiff used this batch to
27 cure its meat, the meat spoiled. Id. at 121. The plaintiff argued that the economic loss rule did not
28 bar its strict liability claim because the meat curing agent physically damaged their meat. Id. at 123.

11

1  The court held that recovery for the harm to the meat sounded in contract rather than tort law
2  because "[t]he damage was the foreseeable result from a failure of the product to work properly
3  because of a defect or omission from the product," and "[w]hen, as here, the loss relates to a
4  consumer or user's disappointed expectations due to deterioration, internal breakdown or non-
5  accidental cause, the remedy lies in contract." Id. at 125. The court held that tort theory would be
6  more appropriate if the curing agent had caused, for example, chemical burns to workers or damaged
7  other equipment. Id.

Plaintiffs also cite cases from other states. These are only persuasive, however, to the extent that they apply law similar to that of California. Contrary to Plaintiffs' arguments, California looks to the parties' "disappointed expectations" in determining whether the economic loss rule applies. Robinson Helicopter, 34 Cal. 4th at 988 ("The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise."). Consequently, Lesiak v. Cent. Valley Ag Co-Op, 283 Neb. 103 (2012), which rejected the "disappointed expectations test," is not persuasive authority. Similarly, Foremost Farms USA Co-op v. Performance Process, Inc., 726 N.W.2d 289 (Wi. Ct. App. 2006), does not help Plaintiffs because there was no allegation that the defoamer at issue there performed inadequately. Id. at 745.

In sum, Plaintiffs' "other property' allegation is really an allegation that the machines that Plaintiffs purchased from Defendants did not perform as specified, which sounds in contract. The Court therefore dismisses these claims with prejudice.

**III. Conclusion**

The Court grants Defendants' Rule 12(b)(6) motion and dismisses Claims 5-8 of the SAC with prejudice. Because these are the only claims that Plaintiffs assert against the Czech Defendants, the Court denies the Czech Defendants' Rule 12(b)(2) motion as moot.

**IT IS SO ORDERED.**

*Elijah D. Laporte* [signature]

Dated: 10/29/13

ELIZABETH D. LAPORTE
United States Magistrate Judge